McCloskey *v.* The People.

---

SUPREME COURT. Kings General Term, December, 1862.
*Emott, Lott* and *Brown*, Justices.

JAMES McCLOSKEY, plaintiff in error, *v.* THE PEOPLE, defendants in error.

The mere snatching of a thing from the hand or person of another, without any struggle or resistance by the owner, or any force or violence on the part of the thief, will not constitute robbery.

Where the court instructed the jury that feloniously taking another's property with violence sufficient to constitute an assault and battery would make out the crime of robbery, it was held to be erroneous, and, the prisoner having been convicted under such a charge, the judgment was reversed.

Where the property is not obtained by putting the person in fear of immediate injury to the person, the violence necessary to make the offense amount to robbery must be sufficient to force the person to part with his property, not only against his will, but in spite of his resistance.

THE prisoner was indicted for a robbery, charged to have been committed on Halsey F. Wing, in taking violently from his person four pieces of silver coin of the value of one dollar, and one hat of the value of four dollars.

The prisoner pleaded not guilty, and was tried at a Court of Sessions held in the county of Kings, in March, 1862, before the County Judge and the Justices of the Sessions.

*Halsey F. Wing*, called by the district attorney, testified as follows: I never knew defendant before the evening in question;

he came into White's drinking saloon; think it was about 11 o'clock P. M.; he came in with a young man and had a drink; he then asked if I couldn't treat; I said I supposed so; took a drink with them; I paid for it; started to go; he said I must go with him; took hold of my arm and pulled me out; said he was going down Ryerson street; pulled me with him; asked how much money I had; said not much; he said let me see it; I pulled out some change from my pocket, and held it close in my hand; he said I had more money than that; jumped around in front of me, had one arm around my neck, put his hand in my pocket, pulled out half dollar and a smaller coin and knife; said I could have knife, and handed it back to me; he called me Belknap; said he would be easy with me if I'd give him some money; I asked if he wanted to rob me; I ran up on the stoop and rang the bell; he came up; I got hold of his hands and held him, and kicked against the door; I pushed him off the stoop; he came up again; I pushed him off again; he got up, took my hat and ran away; went to station house, got an officer and had him arrested; he came out of a liquor store in Myrtle avenue, not quite a block from where the difficulty took place.

During the cross-examination of the witness he stated:

The defendant had been drinking that night; didn't consider him intoxicated; I consider a man intoxicated when he staggers from one side of the sidewalk to the other, not otherwise; he put his hand in my right side pocket; he stood in front of me at the time; had hold of me with the other hand around my neck or shoulders; stood so probably fifteen seconds, or perhaps not so long; we walked along together; before that he had hold of my arm; he took a fifty cent piece and another coin; don't know what it was; smaller than fifty cents; he gave me the knife back; witness had some small coin in the right hand holding; don't know what was done with the other; rememember I broke loose and ran away from him; I tried to get loose from him whilst he had his hand in my pocket; tried to shove him away with my left hand, I think; am not positive; I shoved with my left or right hand; am not

McCloskey *v*. The People.

positive I shoved him with the other hand; I stepped back from him, or tried to; he, defendant, took the change out of his, witness', right pocket; knew a fifty cent piece and some other change remained; don't know how much I had in my hand; left fifty cent and coin in my pocket; didn't want him to know how much; didn't try to prevent his putting his hand in my pocket; it was there before I knew he intended to do it; I knew when he drew his hand out; he put it in and took it out in an instant; don't remember I said anything at the moment he put hand in or out; I turned round and tried to get in the house; don't know that I stepped in front of him.

*Q.* What were you doing with your right hand while the defendant had his arm over your shoulder and his hand in your pocket? *A.* I had some small change in my right hand, holding it. *Q.* What were you doing with your left hand during this time? *A.* I don't know. *Q.* What did he say to you while he had his hand in your pocket? *A.* Nothing. *Q.* What did you say to him? *A.* Nothing. I tried to shove him away with my left hand, I think, I am not positive; I cannot say that I did anything; he took his arm from my shoulder when he took his hand out of my pocket; I am not positive I shoved him with either hand; I stepped back from him, or tried to. *Q.* Did you do anything to prevent him from putting his hand in your pocket? *A.* I did not. *Q.* Did you do anything to prevent him from taking the money out of your pocket? *A.* No. *Q.* Did he make any threats? *A.* No. *Q.* Were you frightened at the time he took the money? *A.* No; I did not know but that he was playing or joking with me when he put his hand in my pocket. *Q.* Then it did not occur to you at the time that he was robbing you? *A.* No. *Q.* When did that first occur to you? *A.* After he took the money and asked me if I hadn't more; he did not injure me in any way; he talked friendly and good naturedly the little way we came together. I walked along with him of my own accord when he pulled me out of the door; I took it to be good natured.

*Re-direct:* I had bills about me; I paid for the drinks I took with him in change; he shoved my vest up; had bills in my fob pocket; this was after he took the money out of my pocket.

After other witnesses had been examined, the testimony was closed, and the defendant's counsel requested the court to charge the jury the following propositions, to wit:

1st. That the evidence does not show that such violence was used as to constitute the offense of robbery.

2d. That the facts, as stated by the complaining witness, do not constitute such violence as to bring the case within the definition of robbery in the first degree.

3d. That the violence contemplated by the statute means actual violence, and the laying of the arm over the shoulder, as testified to by the witness, does not constitute such actual violence.

4th. That there is no evidence whatever in the case to constitute the charge of robbery.

5th. That the degree of violence that would constitute an assault and battery, would not necessarily be such violence as to constitute robbery by violence.

6th. That the sudden snatching of the money from the complainant, in the manner described by the witness, as testified to, does not amount to robbery.

7th. That there is no evidence to go to the jury upon the question of robbery.

8th. That there is no evidence to show that the taking was against the will of the complainant.

The court refused to charge each and all of said propositions separately, and the prisoner's counsel excepted separately to each of said refusals.

The court charged the jury, among other things, as follows: That if the jury believed the testimony of the witness, that the prisoner thrust his arm around his neck and thrust his hand in his pocket, and took therefrom the coin or money in the manner testified to, with felonious intent, then he is

McCloskey *v.* The People.

guilty as charged. To which charge prisoner's counsel excepted.

The court also charged the jury that the same degree of violence that would constitute an assault and battery in any case, would be sufficient violence to constitute a robbery by violence to the person. To which charge prisoner's counsel also excepted.

The court also charged the jury, that if they found that defendant committed an assault and battery, with intent to rob, he could be so convicted under the indictment. To which charge the prisoner's counsel excepted.

The court also charged the jury, that feloniously taking the personal property of another, from his person, by putting him in fear of some immediate injury to his person, is robbery, and that if the expression of prisoner, as testified to by witness, "Give me your money and I'll be easy with you," conveyed to his mind fear of some immediate injury to his person, and the prisoner at the same time feloniously attempting to take the money or bills from complainant's person, but did not succeed, that would be an attempt to rob, and he could so be convicted under the indictment. To which charge prisoner's counsel then and there duly excepted.

Prisoner's counsel then requested the court to charge the jury, that there was no evidence of fear, which the court refused to do, and the prisoner's counsel excepted.

The jury rendered a verdict of guilty, and the prisoner was sentenced to imprisonment in the State prison for the term of ten years.

The record was then removed into this court by writ of error.

*S. D. Morris*, for the defendant.

I. The court erred in refusing to charge the 1st, 2d and 3d propositions, as to the degree of violence necessary to constitute robbery by violence to the person.

In order to constitute robbery in the first degree, the following facts must appear: 1st. That certain property was taken;

2d. That it was taken with a felonious intent; 3d. From the person or in the presence of the owner; 4th. Against his will; 5th. That they were taken either by violence to the person, or by putting the owner in fear. The 1st and 3d ingredients of this offense are not denied; the 4th and 5th are expressly disproved by Wing himself; and the 2d by fair implication.

II. The gist of the offense of robbery is the *force* and terror. (1 *Hale P. C.*, 532; 2 *East P. C.*, 707; 1 *Russ.*, 869; *R.* v. *Norris*, 2 *Car. & P.*, 349; *Roscoe Cr. Ev.*, 893.)

No taking by violence will, at the present day, be considered as sufficient to constitute robbery, unless some injury be done to the person (*Lapier's Case*, 2 *East P. C.*, 557), or unless there be some previous struggle for the possession of the property, or some force used to obtain it. (1 *Russ.*, 871; *Lapier's Case, supra Roscoe; Cr. Ev.*, 894, 898; *Moore's Case*, 1 *Leach*, 335; *Mason's Case, Russ. & Ry.*, 419; *Roscoe Cr. Ev.*, 419, 899; 2 *Archb. Cr. Pr. and Pl.*)

The violence must precede the taking. (*Barb. Cr. Law*, 144.

III. The court erred in refusing to charge the jury, "that the degree of violence that would constitute an assault and battery would not necessarily be such violence as to constitute robbery by violence."

1. Any injury whatsoever, be it ever so small, to the person in an angry, or revengeful, or rude, or insolent manner, as by spitting in the face, or throwing water on the person, is a battery. (*Roscoe Cr. Ev.*, 288.)

2. The snatching of a bundle from under the arm in a rude manner, is an assault and battery; but if done with a felonious intent it is not robbery. (*Macauley's Case*, 1 *Leach*, 287; *Roscoe Cr. Ev.*, 898.)

IV. The court erred in refusing to charge the jury, "that the sudden snatching of the money from the complainant in the manner described by witness, does not amount to a robbery." (*Roscoe Cr. Ev.*, 893; *Macauley's Case*, 1 *Leach*, 290.)

V. The court erred in charging the jury, "that if they believed the testimony of the witness that the prisoner thrust

McCloskey v. The People.

his arm around his neck, and thrust his hand in his pocket, and took therefrom the coin or money in the manner testified to with the felonious intent, then he is guilty as charged."

1. This charge took from the jury the right to say whether the money was taken by Wing's assent or not.

2. It was equivalent to a direction to the jury to convict.

VI. The court erred in charging the jury, " that the same degree of violence that would constitute an assault and battery in any case would be sufficient violence to constitute robbery by violence to the person."

1. The sudden snatching of a bundle out of the hand would be an assault and battery, yet it was holden not to be robbery. (Macauley's Case, supra.)

2. " An umbrella was snatched suddenly out of the hand of a woman, as she was walking along the street." The act was clearly an assault and battery, but no robbery. (1 Russ. on Cr., 874, Am. note C.)

3. " The mere act of taking being forcible, will not make this offense highway robbery; to constitute the crime of highway robbery the force used must be of such a nature as to show that it was intended to overpower the party robbed, and prevent his resisting, and not merely to get possession of the property stolen; thus, if a man walking after a woman in the street, were, by violence, to pull her shawl from her shoulders, though he might use considerable violence, it would not, in my opinion, be highway robbery, because the violence was not for the purpose of overpowering the party robbed, but only to get possession of the property." (1 Russ., 871, note C.)

John Winslow (District Attorney), for the People.

I. All the propositions involving questions of fact were properly left to the jury by the court. And all requests of counsel for defendant to take such questions from the jury were rightly refused.

The first, third, sixth, seventh and eighth propositions, which the defendant's counsel requested the court to charge,

involved questions of fact, which should be left to the consideration of the jury.

II. The proposition charged by the court, " that if the jury believed the testimony of the witness, that the prisoner thrust his arm," &c., &c., " *in the manner testified to, with the felonious intent, then he is guilty as charged,*" was, in effect, only saying to the jury that if they believed the testimony of the complaining witness, the case for the People was made out, and the defendant must be convicted.

III. The next proposition charged by the court, as to the degree of violence necessary, with the other elements that make up the offense, is correct.

The court on this point only said, in effect, that if all the other conditions required by the statute to constitute robbery, such as taking the property against the will, &c., are proved, then the violence that would make assault and battery would be sufficient in the case at bar.

IV. The next proposition charged, as to fear, is of no importance here, inasmuch as the jury found the principal offense.

V. The facts testified to by the complaining witness, Mr. Wing, clearly establish the offense charged in the indictment, and were properly submitted to the jury.

*By the Court,* EMOTT, J.    The Revised Statutes define robbery in the first degree to consist in feloniously taking personal property of another from his person or in his presence against his will, by violence to his person, or by putting such person in fear of immediate injury to his person. (2 *R. S.*, 677, § 55.) The common law definition of robbery was the same. (4 *Bl. Com.*, 243; 1 *Hale Pl., vol.* 1, *ch.* 46; 2 *East Cr. Law, ch.* 16, § 124, *seq.*) The mere snatching anything from the hand or the person of any one, without any struggle or resistance by the owner, or any force or violence on the part of the thief, will not constitute robbery.

In *Gascoigne's Case* (*Leach*, 313; *East Cr. Law, vol.* 2, *p.* 709), the prisoner snatched some money out of the pocket of a

McCloskey v. The People.

woman whom he was conveying to prison on a criminal charge. The prisoner was not a constable, but attended the police office as a runner. He was convicted of robbery, and the conviction was sustained on the ground, which was proved, that he had violently forced the woman into a coach and hand-cuffed her, with the felonious intent of getting her money, and the direction to the jury at the trial put the case upon this exclusively. The cases which are often cited of taking an ear ring, which was held to be a robbery when it was taken with such violence as to lacerate the ear of the wearer, or a diamond hair ornament tearing out with it a part of a lady's hair from her head, are illustrations of the rule as to the degree of violence necessary to constitute the offense of robbery. (*Leach*, 238.)

The court below, in the present case, instructed the jury in effect that feloniously taking another's property with violence sufficient to constitute an assault and battery, would make out the crime of robbery; and again, that if they believed the story of the principal witness, the offense was made out.

In these instructions the judge was in error. In the cases to which I have referred, as well as in many others to be found in the books, the snatching the property was sufficient to constitute an assault and battery, yet that alone did not make the felonious taking more than a larceny. The property must be taken by violence to the person, which means more than a simple assault and battery. The violence must be sufficient to force the person to part with his property, not only against his will, but in spite of his resistance. The rule of law laid down by the court below went farther than the authorities justify, and the application of the rule to the facts was also incorrect.

The proof showed that the prisoner took the money which he stole out of the prosecutor's pocket, while they were walking together in a friendly manner.

No more force was used than sufficient to pull the money out of the pocket of the witness.

Both the men had been drinking, and the prosecutor, at the

time of the act, evidently considered and treated the prisoner's conduct as a joke.    He made no resistance, and yielded neither to force or fear.    If he was led to entertain the idea that the prisoner intended to rob him, or to any fear or apprehension of violence or injury from him, it was not, as he himself states, until after this offense was committed.

Under these circumstances, the violence to the person in taking the property, which is the essential element of robbery, was wanting, and the prisoner's offense was simply a larceny.

The judgment of the Court of Sessions must be reversed and a new trial ordered.

SUPREME COURT.   Kings General Term, December, 1862.
*Emott, Lott* and *Brown*, Justices.